## Mary vs. The State.

The burning necessary to constitute arson of a house at common law, must be an actual burning of the whole or some part of the house; but it is not necessary that any part of the house should be wholly consumed; and our statute (*Gould's Dig. p.* 338,) does not materially change the common law definition of the offence: And so, an indictment merely charging that the defendant set fire to the house is fatally defective as an indictment for arson.

An indictment charging that the defendant set fire to the house, with intent *to injure the owner,* is defective under *section* 7, *p.* 339, *Gould's Dig.* It should charge that the defendant set fire to the house with intent to burn it.

Where a person attempts to burn a house by setting fire to it, but fails to accomplish such a burning as constitutes arson, he is guilty of a misdemeanor.

*Appeal from Pulaski Circuit Court.*

Hon. John J. Clendenin, Circuit Judge.

GARLAND & RANDOLPH, for appellant.

JORDAN, Attorney General, contra.

Mr. Chief Justice ENGLISH, delivered the opinion of the court.

The appellant, Mary, was indicted for arson, in the Pulaski circuit court, as follows:

" The grand jurors, etc., etc., present that Mary, a colored woman, slave for life, the property of Nancy Rider, late of etc., on the 18th day of November, A. D. 1861, at etc., with force and arms, feloniously, wilfully and maliciously, did set fire to a certain dwelling house of William Murray, there situate, with intent thereby then and there to injure the said William Murray, contrary to the form of the statute," etc., etc.

She was tried upon the plea of not guilty, convicted, and sentenced to receive five hundred lashes.

Her counsel moved in arrest of judgment upon the grounds, 1st. That the indictment charged her with no offence, etc.; 2d. That the name of no person was indorsed on the indictment as prosecutor, etc.; and 3d. That there was no averment in the indictment, that her mistress had refused to compound the offence with the injured party, etc.

The motion in arrest was overruled and she appealed.

1. It is insisted that the indictment is fatally defective as an indictment for arson, because it fails to allege that the house was burned.

Arson, *ab ardendo*, (as it stood at common law, and independently of the provisions of acts of parliament,) is the malicious and wilful burning of the house, or out-house of another man.

The burning necessary to constitute arson of a house at common law must be an actual *burning* of the whole, or some part of the house. Neither a bare intention, nor even an attempt to burn a house by actually setting fire to it, will amount to the offence, if no part of it be burned: but it is not necessary that any part of the house should be wholly consumed, or that the fire

should have any continuance ; and the offence will be complete, though the fire be put out, or go out of itself. 4 *Black. Com.* 220–3 ; 4 *Steph. Com.* 141–3 ; 2 *Russ. Cr.* 548.

Hence, the words, *incendit et combussit* were necessary, in the days of law-latin, to all indictments for arson. *Ib.* And in the precedents founded upon the common law, and not upon statutory definitions, the words set fire to and *burn*, etc., are used. 3 *Greenl. Ev. sec.* 51 ; *Whart. Prec.* (389.)

Our statute (*Gould's Digest, p.* 338) makes it arson to burn buildings, etc., which by the common law were not the subjects of arson, but does not otherwise materially change the common law definition of the offence. Thus :

*Sec.* 1. Arson is the wilful and malicious *burning* the house, or other tenements of another person.

*Sec.* 2. Every person who shall wilfully and maliciously *burn*, or cause to be *burned*, any dwelling house, or other house though not herein specially named, shall be deemed guilty of arson.

*Sec.* 3. If any person shall wilfully and maliciously *burn*, or cause to be *burned* any state-house, court-house, prison, church, bridge, or any other public building, although not specially named, such person shall be deemed guilty of arson.

*Sec.* 4. If any person shall wilfully and maliciously *burn* or cause to be *burned* any steamboat, or other vessel, or any water craft whatever, etc., he shall be deemed guilty of arson.

*Sec.* 5. If any person shall wilfully set fire to his own building or other property, with the intent to burn the property of any other person, and the property or building of any other person shall thereby be *burned*, such person shall be deemed guilty of arson.

It may be seen that in each of these sections *burning* is a material element of the offence ; and we think that an indictment founded upon any one of them should aver that the property was burned ; and this conclusion is sustained by adjudications

entitled to much respect. *Cochrane vs. The State*, 6 *Maryland Rep*. 404; *Howell vs. Commonwealth*, 5 *Grattan Rep*. 664.

But, as above shown, to sustain the allegation of *burning*, it is not necessary to prove, upon the trial, that any part of the house, much less the entire building, was wholly consumed.

The indictment before us, though it follows a precedent to be found in 2 *Arch. Cr. Prac. & Plead.*, 7 *Ed. by Waterman, p.* 710, is, we think, materially defective in not alleging that the house was burned. The precedent referred to was doubtless framed upon the English statutes.

It has been said that the words "set fire to" mean the same as to burn, (1 *Bishop Cr. L. sec.* 189; 2 *East. P. C.* 1020,) but it has been adjudicated to the contrary, (6 *Maryland,* 405; 5 *Gratt.* 670,) and it is safest to follow the common law precedents.

Where a person attempts to burn a house, etc., by setting fire to it, but fails to accomplish such a burning as constitutes arson, he is guilty, by the 7th section of our statute, as well as by the common law, of a high misdemeanor. The 7th section pro es that: If any person shall set fire to any building or tenement of another with intent to burn the same, although such house or tenement may not be burned, he shall be deemed guilty of a misdemeanor, and on conviction shall be fined, etc.

The indictment before us was manifestly not framed upon this section, for the endorsement upon the indictment and the record entries, show that the prosecution was for *arson*. But if it was framed upon the 7th section, it is materially defective, because it charges that the appellant set fire to the house with intent *to injure the owner*, when it should have charged, in the language of the statute, an intent to burn the house. *Gabe, etc. vs. The State*, 1 *Eng.* 519.

2 & 3. The second and third grounds of the motion in arrest of the judgment are based upon the assumption that the appellant is indicted for a misdemeanor; and her counsel insist that *arson*, when committed by a slave, is not a felony.

Prior to the act of 18th Dec. 1848, *Gould's Dig. p.* 383-4, we

had no statute defining felony, and the courts had to look to the common law to ascertain what offences were to be treated as of the degree or grade of felony, and what were to be regarded as misdemeanors.

By the common law, *felony* is an offence which occasions a total forfeiture of either lands or goods, or both, to which capital or other punishment may be superadded, according to the degree of guilt. *Bouv. Dic.*

In this state there never was any forfeiture, as a consequence of conviction of any crime, the bill of rights prohibiting it : yet the term, *felony*, was used in the statutes, and in criminal proceedings, before the passage of the act of 18th Dec. 1848, defining it, as denoting a grade or class of crime.

But it is argued by the counsel for appellant, that the term *felony*, as defined by the common law, cannot, with propriety, be applied to any offence committed by a slave, because a slave is legally incapable of owning property.

But this objection is obviated, when it is borne in mind that the term felony was used in this state, before the act defining it, as denoting a grade or class of crimes, and not as indicating the character of punishment attached to them.

Thus, it was provided by the Revised Statutes of 1838, p. 281-2, that : " In all trespasses and offences, less than *felony*, committed by a *slave*, on the person or property of another person, the master may compound with the injured person, and punish his own slave, without the intervention of any legal trial or proceeding," etc.

And again : " In all cases of *felony*, the slave committing the same shall be tried in the same court, and the same rules of evidence observed, as in cases of white persons committing the life offence ; excepting that slaves may be witnesses for and against slaves."

The act of 18th Dec. 1848, declares that : "The term "*felony*," as used in the laws of the state of Arkansas, is defined to be any crime, or offence, which, by the laws are punishable, either

capitally, or by imprisonment in the penitentiary, or when any portion of the punishment inflicted shall be imprisonment in the penitentiary."

Slaves were expressly excepted out of the penitentiary code (*Gould's Dig. p.* 385, *sec.* 7,) and were not, at the time the act defining felony was passed, and are not now, subject to imprisonment in the penitentiary for any offence. Hence, it is insisted by the counsel for the appellant, that *arson* by a slave, not being punished capitally, is not a felony, but a misdemeanor.

It is probable that the legislature, in passing the act defining felony, had not slaves in their minds, and did not intend to embrace crimes committed by them in the definition. But if it must be concluded that they did, from the scope of the language employed, we think the proper construction of the act is, that it determines the offences that are to be treated as felonies, in criminal proceedings, without regard to the exemption of a particular class of persons from the character of punishment which is made generally the criterion of felony. Thus *arson* is a felony within the definition, because persons generally committing the offence are punishable by imprisonment in the penitentiary; and the class or grade of the offence being thus established, a slave committing arson, must be prosecuted as for a felony; though he is not to be punished by imprisonment in the penitentiary.

Thus, in support of the reasonableness of this construction, arson was classed as a felony at common law, because it was punishable generally by a forfeiture of the property of the criminal, but it was nevertheless a felony in persons destitute of property, and who could not be subjected to forfeiture as a punishment, but were punishable otherwise.

The consequence of a different construction of the defining act than that above indicated, would be to authorize the master to compound offences committed by his slave other than such as are punished capitally, which might not, in many instances, answer the ends of public justice, for there are but few offences punishable with death, under our criminal code.

5

But the indictment being materially defective in the matter above indicated, the judgment must be reversed, and the cause remanded with instructions to the court below to sustain the motion in arrest of judgment, and hold the appellant subject to answer another indictment.